J-S22016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEN SANTOS HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 2255 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 29, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0004387-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEN SANTOS-HERNANDEZ | : | |
| | : | |
| Appellant | : | No. 2256 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 29, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0004389-2019

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED AUGUST 5, 2026**

Ken Santos-Hernandez ("Santos-Hernandez") appeals *pro se* from the judgment of sentence imposed following the revocation of his probation.  After review, we vacate the judgment of sentence and the finding of a violation, and remand for a new probation violation hearing.

We summarize the relevant factual and procedural history in this matter as follows.  In 2019, Chester County police arrested and charged Santos-

Hernandez with stalking, terroristic threats, and resisting arrest.[1] On October 5, 2020, Santos-Hernandez pled guilty to all charges. The trial court imposed a sentence of three years' probation for stalking and eleven and one-half to twenty three months' incarceration for terroristic threats, to run concurrently with one another. The court further imposed a sentence of one year probation on resisting arrest, to run consecutively to the other sentences. Due to significant credit for time served, Santos-Hernandez was released immediately on parole. On December 29, 2020, Santos-Hernandez incurred new stalking charges in Delaware County and was placed on house arrest with an electronic home monitoring system. He removed his electronic ankle monitoring bracelet and absconded from supervision. Subsequently, he incurred four new criminal cases in Chester County. Santos-Hernandez pled guilty to the Chester County cases, and a jury found him guilty in his Delaware County case.

On July 29, 2025, the trial court held a violation of probation ("VOP") hearing. Santos-Hernandez, who was incarcerated, appeared via video. Regarding his representation, the following exchange took place on the record at the start of the hearing:

> THE COURT: Good morning. How are you[,] Mr. Santos-Hernandez?
>
> THE DEFENDANT: I'm okay. How are you?

_____

[1] **See** 18 Pa.C.S.A. § 2709.1(a)(1); 2706(a)(1); 5104.

> THE COURT: I'm all right. Thank you. We're here for a violation on your cases from 2019. Do you want a lawyer today?
>
> THE DEFENDANT: Standby is fine.
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: Standby is fine.
>
> THE COURT: Anybody is fine?
>
> THE DEFENDANT: A standby.
>
> THE COURT: Oh, standby. Mr. Nelson happens to be here in the room this morning, but you want to represent yourself; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. . . .

N.T., 7/29/25, at 2. The court then heard evidence from Probation Officer Parker Towarnicki regarding Santos-Hernandez's alleged technical violations and numerous new convictions, and Santos-Hernandez represented himself *pro se*. At the conclusion of the hearing, the trial court revoked Santos-Hernandez's probation and imposed a new sentence of eighteen to thirty-six months' incarceration, to run consecutively with any other sentence served. Santos-Hernandez filed a timely *pro se* motion to reconsider sentence, which the trial court denied. He then filed a timely *pro se* notice of appeal,[2] and both he and the trial court complied with Pa.R.A.P. 1925.

_____

[2] We note that Santos-Hernandez's *pro se* notice of appeal was docketed on August 29, 2025, one day beyond the thirty-day time period. **See** Pa.R.A.P. 903(a); **see also** Pa.R.A.P. 121(f) (providing that a "*pro se* filing submitted
*(Footnote Continued Next Page)*

Santos-Hernandez raises the following issues for our review:

1. Did the trial court err[] in subjecting [Santos-Hernandez] to an illegal sentence, upon revocation ordering that the remainder of the sentence be served consecutively?

2. Did the trial court err[] in not providing [Santos-Hernandez] a written notice of each alleged violation of probation required prior to the hearing?

3. Did the trial court err[] in denying [Santos-Hernandez] the right to standby counsel?

4. Did the trial court err[] in revoking [Santos-Hernandez's] probation because [he] had serious psychiatric problems which interfere[d] with the ability to comply?

5. Did the trial court err[] in denying [Santos-Hernandez] the right to confront and cross-examine the witnesses against him?

6. Did the trial court err[] in denying [Santos-Hernandez] the right to testify and present evidence?

Santos-Hernandez's Brief at 4-5.

As a threshold matter, we must determine whether Santos-Hernandez waived his right to counsel at the violation hearing. Although Santos-Hernandez did not raise this issue on appeal, our Court has explained:

_____

by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to prison authorities for purposes of mailing as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence"). Santo-Hernandez's notice of appeal does not have a postmark; however, since he was incarcerated, we will presume he submitted his notice of appeal to prison authorities within the thirty-day time period and consider it timely filed. **See Commonwealth v. Patterson**, 931 A.2d 710, 714 (Pa. Super. 2007) (declining to quash appeal for untimeliness where notice of appeal was filed three days after deadline by a *pro se*, incarcerated appellant, even though the record lacked a post-marked envelope noting the date of mailing).

Where the parties fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte*. However, this Court has subsequently held that where an indigent [defendant] was denied his right to counsel—or failed to properly waive that right—this Court is required to raise this error *sua sponte* and remand for the . . . court to correct that mistake. Further, as a general rule, failure to raise an issue in a criminal proceeding does not constitute a waiver where the defendant is not represented by counsel in the proceeding. This rule does not apply where the defendant knowingly and intelligently waived representation by counsel.

It is the responsibility of the trial court to ensure that a colloquy is performed if the defendant has invoked his right to self-representation. Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. Deprivation of these rights can never be harmless. Courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.

*Commonwealth v. Murphy*, 214 A.3d 675, 678 (Pa. Super. 2019) (citations and quotation marks omitted).

Considering the inherent importance of the right to counsel, "it is apparent that this Court has a duty to review whether" Santos-Hernandez "properly waived his right to counsel prior to the presentation of evidence against him at the violation of probation hearing." *Id*. at 679 (holding that this Court is obligated to review *sua sponte* whether a *pro se* defendant waived his right to counsel at a violation hearing where this issue was not asserted on appeal); *see also Commonwealth v. Johnson*, 158 A.3d 117 (Pa. Super. 2017) (extending this Court's duty to *sua sponte* review a defendant's waiver

of counsel at a suppression hearing even though he did not raise this issue on appeal).

A criminal defendant's waiver of counsel is governed by Pa.R.Crim.P. 121(A)(2), which provides:

> To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, ***at a minimum***, shall elicit the following information from the defendant:
>
> (a)    That the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>
> (b)    That the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>
> (c)    That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>
> (d)    That the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all of the normal rules of procedure and that counsel would be familiar with those rules;
>
> (e)    That the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently;
>
> (f)    That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently, and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2) (emphasis added).  "In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right

and the risks and consequences of forfeiting it." *Johnson*, 158 A.3d at 121 (citation omitted).

Importantly, "the colloquy relating to the defendant's attempted waiver of counsel must appear on the record." Pa.R.Crim.P. 121 (comment); *see also* Pa.R.Crim.P. 121(C) (providing that "[w]hen the defendant seeks to waive the right to counsel . . . , the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel"). "Failing to conduct an on the record colloquy pursuant to Rule 121(C) before allowing a defendant to proceed *pro se* constitutes reversible error." *Johnson*, 158 A.3d at 122.

After careful review of the record, we conclude that Santos-Hernandez did not make a knowing, voluntary, and intelligent waiver of counsel at his VOP hearing. The trial court's discussion with Santos-Hernandez regarding his representation, as relayed above, did not satisfy the minimum requirements set forth in Rule 121(A)(2), and failed to make him "aware of both the nature of the right [to counsel] and the risks and consequences of forfeiting it." *See* N.T., 7/29/25, at 2; *see also Johnson*, 158 A.3d at 121; *Murphy*, 214 A.3d at 679 (holding that asking a *pro se* defendant at a VOP hearing, "[Y]ou understand you have a right to an attorney with you at these proceedings?," without more, was "truncated and fell well short of a colloquy memorializing a knowing and voluntar[y] waiver of counsel"). Since the trial court did not conduct an on the record colloquy before allowing Santos-

Hernandez to proceed *pro se*, we are constrained to find that he did not knowingly, voluntarily, and intelligently waive his right to counsel.

Accordingly, we vacate both the order revoking Santos-Hernandez's probation and the resulting judgment of sentence, and remand for further proceedings. The trial court shall appoint counsel for Santos-Hernandez if he is indigent, or conduct a thorough on the record colloquy consistent with the requirements of Rule 121. The trial court may then proceed with a new probation revocation hearing.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/5/2026